FRANCES HOSIERY MILLS, INC. v. BURLINGTON INDUSTRIES, INC.

No. 17

(Filed 15 May 1974)

1. **Constitutional Law § 26— full faith and credit — void in personam judgment**

A judgment *in personam* is void if the court which rendered it did not have jurisdiction both as to the person and as to the subject matter of the action before it, and the Full Faith and Credit Clause does not give validity to such void judgment when it is offered as a basis for action, or as a defense, in the court of another state. Article IV, § 1, of the Constitution of the United States.

2. **Constitutional Law § 26; Judgments § 51— foreign judgment — lack of jurisdiction — burden of proof**

When suit is brought upon a judgment *in personam* rendered by a court of another state, or when such judgment is pleaded as a defense, the burden is upon the person resisting such judgment to establish that the court rendering it had no jurisdiction, and the jurisdiction of such court is to be determined by the law of the state wherein the judgment was rendered.

3. **Constitutional Law § 26; Judgments § 51— foreign judgment — inquiry into foreign court's jurisdiction**

A mere recital in a judgment that the court rendering it had jurisdiction is not conclusive and, notwithstanding such recital, the court of another state in which the judgment is asserted as a cause of action or as a defense may, within certain limits, make its own independent inquiry into the jurisdiction of the court which rendered the judgment.

4. **Constitutional Law § 26; Judgments § 51— foreign judgment — inquiry into foreign court's jurisdiction — prior litigation of issue**

Jurisdiction of a court to enter a judgment may not be inquired into by the court in another state in which the judgment is thereafter pleaded as a cause of action or as a defense where the jurisdiction issue was fully litigated in and determined by the court which rendered the judgment.

5. **Judgments § 51— foreign judgment — jurisdiction of foreign court**

The New York court which gave judgment *in personam* against plaintiff in favor of defendant had no jurisdiction to render such judgment, unless plaintiff consented to the jurisdiction of that court by its contract with defendant, where plaintiff is a North Carolina corporation not doing business in New York, it was not served with process in New York, its contract with defendant was made in North Carolina and required performance in this State, the claim of defendant which the New York judgment purported to determine did not originate in any activity of plaintiff in New York or in any contact of plaintiff therewith, and plaintiff did not appear in the New York court.

6. **Uniform Commercial Code § 13— oral contract by telephone — validity**

An oral contract for sale of yarn was enforceable where the evidence of both parties showed that a complete and valid contract was made by telephone. G.S. 25-2-201(3)(b).

7. **Uniform Commercial Code § 13— invoices — written confirmation of contract**

Invoices sent by defendant to plaintiff were sufficient to indicate that a contract for sale had been made between the parties within the meaning of G.S. 25-2-201(1) and constituted a "written confirmation" of a previously made oral contract for sale within the meaning of G.S. 25-2-207.

8. **Uniform Commercial Code § 13— oral contract — written confirmation — additional terms — material alteration — necessity for consent**

When one party to a valid oral contract for the sale of goods, within a reasonable time after the making of such contract, sends to the other party a document purporting to set out in writing the terms of the contract and includes therein a term not previously agreed upon, this constitutes a proposal for an addition to the contract; and when the parties to the contract are "merchants" as defined in G.S. 25-2-104(1), all such proposed additional terms to which the other party does not object in due time become part of the contract unless "they materially alter it." G.S. 25-2-207.

9. **Uniform Commercial Code § 13; Constitutional Law § 26; Judgments § 51— oral contract — written confirmation — additional term — arbitration agreement — material alteration — necessity for consent — foreign arbitration award — full faith and credit**

Where the parties entered an oral contract for the sale of yarn and written confirmations in the form of invoices sent by the seller to the buyer contained an additional term that disputes would be submitted to arbitration in New York, the proposed additional provision for arbitration constituted a material alteration of the contract that may not be deemed incorporated into the contract by reason of the mere silence of the buyer following its receipt of the invoices; therefore, where the buyer did not consent to the provision and the only basis for jurisdiction in a New York court was the purported arbitration agreement, the New York court had no jurisdiction to enter an arbitration award and such award is not entitled to full faith and credit in the courts of this State.

APPEAL by defendant from the decision of the Court of Appeals, reported in 19 N.C. App. 678, finding no error in the judgment of *Robert Martin, S.J.,* for the plaintiff at the 21 May 1973 Session of ALAMANCE.

The ground of appeal is that the courts below failed to give full faith and credit to a judgment of the Supreme Court of the State of New York for the County of New York.

The plaintiff, a North Carolina corporation, manufactures hose in North Carolina. The defendant, a Delaware corporation, with executive offices in Greensboro, North Carolina, manufactures and sells yarn for use in the production of hose. They contracted for the purchase by the plaintiff from the defendant of yarn, and the defendant, for the purpose of performing that contract, shipped yarn to the plaintiff. Hose made by the plaintiff from this yarn were defective.

The present action is a suit for damages for breach of alleged warranties of merchantability and fitness for purpose. The complaint alleges that the contracts of sale were oral and were made in North Carolina and that the defendant was specifically advised of the intended use of the yarn.

By its answer, the defendant denies the alleged warranties and, as an affirmative defense, asserts that all matters in controversy in this action are *res judicata* by virtue of an award of arbitrators, under the rules of the General Arbitration Council of the Textile Industry, and a judgment, upon such award, was entered in the Supreme Court of New York on 13 May 1969, in favor of the defendant against the plaintiff for $6,979.23, the alleged balance due upon the purchase price of the yarn. The answer also asserts a counterclaim for the amount of such New York judgment with interest from its rendition.

The plaintiff filed a reply denying the validity of the New York judgment, for want of jurisdiction in the Court of New York over the plaintiff.

Upon motion of the defendant, the plea in bar was tried separately before a jury. The following facts were stipulated:

"On or about the first of June, 1967, the plaintiff * * * by telephone commenced purchasing yarn from the defendant * * * through an office of the defendant in High Point, North Carolina. Eleven (11) shipments were delivered by defendant to plaintiff as agreed, were used and paid for by the plaintiff.

"Specifically, on January 3, 15, 17 and March 1, 1968, the plaintiff * * * by telephone ordered certain yarn from [the defendant] through an office of the defendant in High Point, North Carolina.

"On or about January 25, 1968, or within a week thereafter, plaintiff alleges it discovered certain defects in panty-

hose produced by defendant's yarn, the subject of orders of January 3, 15, 17, 1968. Plaintiff notified defendant of the alleged defects and stopped payment for the yarn received. * * *

"As the yarn was shipped to the plaintiff by defendant, written invoices were issued for each shipment and duly received by the plaintiff. * * * The specifications on the invoices met the specifications of yarn ordered by telephone and no objection to any of the invoices was made by the plaintiff at the time of delivery. The yarn, subject of the orders and invoices, was received and used by the plaintiff in the production of panty hose.

"Thereafter, a controversy arose between the parties concerning the yarn. Payment was never made to the defendant by the plaintiff for the same, plaintiff alleging that defective conditions in the yarn were the cause of the defective condition in the panty hose, which defective conditions were denied by the defendant.

"The parties were unable to adjust their differences and in July, 1968, [the defendant] gave notice of and requested arbitration as provided in the alleged agreement between the parties as set forth in defendant's Exhibits A, B, C and D [invoices for shipments in fulfillment of the orders of January 3, 15 and 17 and March 1].

"Notice of arbitration hearing was duly served upon [the plaintiff] by registered mail on July 16, 1968.

"On September 30, 1968, [the plaintiff] filed a 'Notice and Objection' to the arbitration proceedings * * * .

"On February 24, 1969, [the plaintiff] filed a motion in the arbitration proceedings * * * stating that at no time and under no circumstances had plaintiff agreed to arbitrate any dispute in the State of New York.

"On February 25, 1969, [the plaintiff] instituted the present action in the Superior Court of Alamance County, North Carolina.

"On April 2, 1969, an unanimous arbitration award was made in favor of [the defendant] and [the plaintiff] was directed to pay to [the defendant] the sum of $6,365.75 for goods sold and delivered upon the contracts above referred

to, together with interest and costs. Thereafter, under date of April 11, 1969, [the defendant] filed a notice of application to confirm the arbitrator's award with the Supreme Court in the State of New York, in the County of New York, with service thereof upon [the plaintiff] by registered mail. * * * Thereafter, the matter came on for hearing before the court in the State of New York on April 28, 1969, and the award of the arbitrators was duly affirmed; the judgment entered against [the plaintiff] in conformity with the arbitrator's award, in the total sum of $6,979.23. * * * ."

The above mentioned Exhibits A, B, C and D are invoices upon the defendant's printed form, which form contains on the front thereof the following printed statement:

"The yarns as described below are ordered at the price and upon conditions of sale below and on the back of this contract.

"The buyer must sign and return a copy of this contract. The seller shall have the right to cancel this contract at any time, without liability on its part, unless a copy hereof is signed and returned by buyer to seller within five days from date hereof. In any event, delivery of yarn to seller for processing or acceptance by buyer of any part of such processed yarn shall constitute acceptance of this contract and all of its terms and conditions. *Controversies are subject to arbitration provisions on the back of this contract.*" (Emphasis added.)

The reverse side of each invoice, under the caption "CONDITIONS OF SALE," contained fourteen printed paragraphs, including the following:

"9. ARBITRATION: (a) Any controversy of claim arising under or in relation to this order or contract, or any modification thereof, shall be settled by arbitration. Such arbitration shall be held in the City of New York, in accordance with the laws of the State of New York, and the rules then obtaining of the General Arbitration Council of the Textile Industry or the American Arbitration Association as the party first referring the matter to arbitration shall elect, and the parties consent to the jurisdiction of the Supreme Court of the State of New York and further consent that any process or notice of motion or other application to the Court or a Judge thereof may be served outside the

State of New York by Registered Mail or by personal service provided a reasonable time for appearance is allowed. (b) The arbitrators sitting in any arbitration arising hereunder shall not have the authority or power to modify or alter any express condition or provision of this contract or to render an award which by its terms has the effect of altering or modifying any express condition or provision hereof."

The above printed "CONDITIONS OF SALE" on the reverse side of each such invoice also contained a paragraph disclaiming any warranties, express or implied, with respect to the goods not specifically set forth on the face of the invoice.

At the trial the defendant first offered in evidence the judgment roll of the State of New York in the matter of *Burlington Industries, Inc. v. Frances Hosiery Mills, Inc.* It then offered testimony with reference to the nature of the arbitration hearing in the City of New York and the nature of the evidence presented by Burlington Industries, Inc., thereat, including the above mentioned Exhibits A, B, C and D. According to this testimony, Frances Hosiery Mills, Inc., was not present or represented at the arbitration hearing.

The plaintiff then introduced evidence to the following effect:

Beginning on 7 December 1967, the plaintiff purchased from the defendant yarn for the manufacture of hose, receiving seventeen shipments over the period ending March 21, 1968. The plaintiff's secretary-treasurer is its officer having responsibility for its purchase of yarn. She placed the orders with the defendant's High Point office by telephone. She never talked to anyone in New York about them. The terms of the sales, including the amount of yarn, price and delivery date were agreed upon in the telephone conversations. In none of the telephone conversations was there any mention of arbitration of any differences which might arise. The above mentioned Exhibits A, B, C and D are documents "confirming an order over the telephone." When each of these arrived, she put it on the plaintiff's bulletin board and checked it against the shipment, as to poundage, when the shipment arrived. She did not read the printed matter thereon and did not sign or return a copy thereof to anyone, nor did she make any objection to the defendant concerning anything appearing on these documents. At no time did

the plaintiff agree with anyone to arbitrate in the State of New York any difference it might have with the defendant.

The defendant then offered evidence to the following effect:

Its representative in its High Point office, with whom the plaintiff's secretary-treasurer talked by telephone in placing orders, told her that he would communicate with the defendant's New York office and get back in touch with her as to the amount and delivery date. He did not have authority to enter into contracts on behalf of the defendant. (He did not testify that the plaintiff was so advised.) There was at this time a problem concerning the availability of yarn. The defendant's vice-president of sales, whose office was in New York, was in charge of deciding "who got the yarn." The above mentioned Exhibits A, B, C and D were prepared in New York and mailed therefrom, with a copy of each going to the defendant's High Point office. At no time was arbitration mentioned in any conversation between the plaintiff and the defendant's High Point office, nor was the plaintiff advised in any such conversation that if any dispute arose over the yarn it would have to go to New York. In the telephone conversations with the plaintiff's secretary-treasurer, the representative of the defendant in its High Point office discussed the price and delivery date but did not "go into any other terms of written contract." He told her "there would be a contract forthcoming covering the discussion we had as to poundage, price and delivery, etc."

The plaintiff then recalled its secretary-treasurer who testified that, in her telephone conversation with the defendant's High Point office, she was never told that the defendant's representative would have to "check with New York." He merely called back and told her that he could give her the desired poundage and the price. The plaintiff did not pay the invoices which were for the "bad yarn."

At the conclusion of all of the evidence, the defendant moved for a directed verdict in its favor upon the affirmative defense. The motion was denied. The following issues were submitted to the jury and each was answered in the affirmative.

"1. Did the defendant's acceptance or confirmation of the plaintiff's order contain additional or different terms than orally agreed upon?

"2. If so, did such additional or different terms materially alter the contract?"

Upon this verdict the court adjudged that the arbitration provision appearing in defendant's Exhibits A, B, C and D was not a part of the contract between the plaintiff and the defendant and is not binding upon the plaintiff.

On appeal to it, the Court of Appeals affirmed the judgment of the Superior Court. From this judgment the defendant now appeals on the ground that it violates the Full Faith and Credit Clause contained in Art. IV, § 1, of the Constitution of the United States.

*Sanders, Holt & Spencer by W. Clary Holt, James C. Spencer, Jr. and Frank A. Longest, Jr., for defendant appellant.*

*Latham, Pickard, Cooper & Ennis by Thomas D. Cooper, Jr., for plaintiff appellee.*

LAKE, Justice.

Article IV, § 1, of the Constitution of the United States provides:

> "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

By an Act of Congress, 28 USCA 1738, the manner in which judicial proceedings in the court of any state are to be proved in other courts within the United States is established and it is provided that judicial proceedings, so authenticated, "shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken."

As was said by Mr. Justice Frankfurter, speaking for the Court in Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577:

> "The implications of the Full Faith and Credit Clause, Article IV, § 1, of the Constitution, first received the sharp analysis of this Court in *Thompson v. Whitman*, 18 Wall. (U.S.) 457, 21 L.Ed. 897. * * * *Thompson v. Whitman* made it clear that the doctrine of *Mills v. Duryee* [i.e., the judgment of a state court should have the same credit, validity and effect in every other court of the United States which

it had in the state where it was pronounced] comes into operation only when, in the language of Kent, 'the jurisdiction of the court in another state is not impeached, either as to the subject matter or the person.' Only then is 'the record of the judgment * * * entitled to full faith and credit.' 1 Kent Commentaries (2d ed., 1832), 261 n. b. * * *

"A judgment in one State is conclusive upon the merits in every other State, but only if the court of the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment."

[1]    The judgment rendered by the New York Court in the present matter is a judgment *in personam.* Such a judgment is void if the court which rendered it did not have jurisdiction both as to the person and as to the subject matter of the action before it. The Full Faith and Credit Clause does not give validity to such void judgment when it is offered as a basis for action, or as a defense, in the court of another state. *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221; *New York Ex Rel Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133; *Bigelow v. Old Dominion Copper Co.,* 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009; *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565; *Thompson v. Whitman, supra; Marketing Systems v. Realty Co.,* 277 N.C. 230, 176 S.E. 2d 775; *Thomas v. Frosty Morn Meats,* 266 N.C. 523, 146 S.E. 2d 397.

[2]    "It is elementary that unless one named as a defendant has been brought into court in some way sanctioned by law, or makes a voluntary appearance in person or by attorney, the court has no jurisdiction of the person and judgment [*in personam*] rendered against him is void." *Thomas v. Frosty Morn Meats, supra; Pennoyer v. Neff, supra.* When suit is brought upon a judgment *in personam* rendered by a court of another state, or when such judgment is pleaded as a defense, the burden is upon such person resisting such judgment to establish that the court rendering it had no jurisdiction, *Thomas v. Frosty Morn Meats, supra,* and the jurisdiction of such court is to be determined by the law of the state wherein the judgment was rendered. *Marketing Systems v. Realty Co., supra; Dansby v. Insurance Co.,* 209 N.C. 127, 183 S.E. 521.

[3]    However, a mere recital in the judgment that the court rendering it had jurisdiction is not conclusive and, notwithstanding such recital, the court of another state, in which the

judgment is asserted as a cause of action, or as a defense, may, within limits noted below, make its own independent inquiry into the jurisdiction of the court which rendered the judgment. *Bigelow v. Old Dominion Copper Co., supra; Brown v. Fletcher's Estate,* 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966; *Andrews v. Andrews,* 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366; *Thormann v. Frame,* 176 U.S. 350, 20 S.Ct. 446, 44 L.Ed. 500; *Pennoyer v. Neff, supra; Thompson v. Whitman, supra.* As Mr. Justice Holmes, speaking for the Court, said in *Chicago Life Insurance Co. v. Cherry,* 244 U.S. 25, 37 S.Ct. 492, 61 L.Ed. 966: "A court that renders judgment against a defendant thereby tacitly asserts, if it does not do so expressly, that it has jurisdiction over that defendant. But it must be taken to be established that a court cannot conclude all persons interested by its mere assertion of its own power, *Thompson v. Whitman,* 18 Wall. 457, even where its power depends upon a fact and it finds the fact. * * * There is no doubt of the general proposition that in a suit upon a judgment the jurisdiction of the court rendering it over the person of the defendant may be inquired into."

[4] Of course, jurisdiction is, itself, an issue which may have been fully litigated in, and determined by, the court which rendered the judgment thereafter pleaded as a cause of action, or as a defense, in a court of another state, as where the defendant therein was actually present in the first court and raised and litigated therein a question concerning the fact and validity of the service of its process upon the defendant.

In *Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed. 2d 186, the petitioners sued in a Nebraska court to quiet title to certain bottom land on the Missouri River. The Nebraska court had jurisdiction of the subject matter if, but only if, the land was in Nebraska. That depended upon whether a shift in the river's course was due to accretion or avulsion. The respondent appeared in the Nebraska court and fully litigated the issues, including a contest of the jurisdiction of the Nebraska court over the subject matter of the controversy. The Nebraska court found the issues in favor of the petitioners and ordered title quieted in them. The respondent thereafter filed suit in Missouri to quiet title of the same land in her. That suit was removed to the Federal Court because of diversity of citizenship. The question arose as to whether the Federal Court in Missouri (in the same position as a State court in this respect) could inquire into the jurisdiction of the Nebraska court over the subject matter. The

District Court held that the Nebraska judgment on this question was *res judicata.* The Court of Appeals reversed, holding that a Missouri court could inquire into the jurisdiction of the Nebraska court over the subject matter of the Nebraska action. The Supreme Court reversed the Court of Appeals, saying, through Mr. Justice Stewart:

"[W]hile it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction —when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.

"With respect to questions of jurisdiction over the person, this principle was unambiguously established in *Baldwin v. Iowa State Traveling Men's Assn.*, 283 U.S. 522. There it was held that a Federal Court in Iowa must give binding effect to the judgment of a Federal Court in Missouri despite the claim that the original court did not have jurisdiction over the defendant's person, once it was shown to the court in Iowa that that question had been fully litigated in the Missouri forum. 'Public policy,' said the Court, 'dictates that there be an end of litigation; that those who have contested an issue shall be bound by the results of the contest, and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he had submitted his cause.' * * *

"Following the Baldwin case, this Court soon made clear in a series of decisions that the general rule is no different when the claim is made that the original forum did not have jurisdiction over the subject matter."

In the Durfee case, a footnote by the Court states: "It is not disputed in the present case that the Nebraska courts had

jurisdiction over the respondent's person. She entered a general appearance in the trial court, and initiated the appeal in the Nebraska Supreme Court."

[5]  In the present case, the plaintiff (defendant in the New York judgment) is a North Carolina corporation not doing business in New York. It was not served with process in New York. Its contract with the defendant was made in North Carolina and required performance in this State. The claim of the defendant, which the New York judgment purported to determine, did not originate in any activity of the plaintiff in New York or in any contact of the plaintiff therewith. The plaintiff did not appear in the New York court. It did not participate in and was not represented at the hearing before the arbitrators in New York. Thus, the New York court which gave judgment *in personam* against the plaintiff had no jurisdiction to render such judgment, unless the plaintiff consented to the jurisdiction of that court by its contract with the defendant. The defendant contends that the plaintiff did so consent, for the reason that the contract provided that any controversy arising thereon would be submitted to arbitration in New York. The plaintiff denies that its contract with the defendant so provided. The contract is governed by the Uniform Commercial Code, G.S. Chapter 25.

[6, 7]  The evidence of both parties in the record before us shows that a complete and valid oral contract for the sale of the yarn was made by telephone, such oral contract being valid and enforceable where, as here, each party "admits in his pleading, testimony or otherwise in court that a contract of sale was made." G.S. 25-2-201(3)(b). Furthermore, as against the defendant, its Exhibits A, B, C and D constitute writings "sufficient to indicate that a contract for sale has been made between the parties," within the meaning of G.S. 25-2-201(1). Each of these exhibits constituted a "written confirmation" of a previously made oral contract for sale, within the meaning of G.S. 25-2-207.

The evidence of both parties is clear that the oral contract in each instance did not include any agreement for arbitration in New York, or elsewhere. Each such written confirmation did state that any controversy or claim arising in relation to the contract "shall be settled by arbitration" to be held in New York in accordance with the laws of that State. However, the plaintiff did not sign and return to the defendant any copy of such document, nor did it at any time otherwise manifest to the

defendant its consent to the arbitration provision, unless its failure to object thereto constitutes such a manifestation of assent.

The Uniform Commercial Code provides in G.S. 25-2-207 as follows:

> "*Additional terms in acceptance or confirmation.—*
>
> (1) A definite and seasonable expression of acceptance *or a written confirmation* which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms. (Emphasis added.)
>
> "(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> > "(a) the offer expressly limits acceptance to the terms of the offer;
> >
> > "(b) they materially alter it; or
> >
> > "(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received. * * * "

[8]  As other courts have observed, this provision of the Uniform Commercial Code is not a model of clarity. However, it does seem clear that when one party to a valid oral contract for the sale of goods, within a reasonable time after the making of such contract, sends to the other party a document purporting to set out in writing the terms of the contract and includes therein a term not previously agreed upon, this constitutes a proposal for an addition to the contract. When, as is stipulated here, the parties to the contract are "merchants," as that term is defined in the Code, G.S. 25-2-104(1), all such proposed additional terms, to which the other party does not object in due time, become part of the contract, unless "they materially alter it."

[9]  Over strenuous belated objections by the plaintiff, the defendant has steadfastly refused to yield its preference for arbitration in New York over litigation in North Carolina. It ill behooves the defendant now to contend that this alleged addition to the oral contract was of no consequence to the parties and,

therefore, not a material change therein. Obviously, under the oral contract, the plaintiff was entitled to present to the courts of North Carolina such claim as it may have against the defendant for breach of that contract. Under the alleged additional term, it could not do so but would be confined to a presentation of its claim to a board of arbitration in New York. Beyond question, such a change in the contract would be a material alteration of it. Consequently, such proposed additional provision may not be deemed incorporated into the contract for sale of yarn between these parties by reason of the mere silence of the plaintiff following its receipt of the defendant's Exhibits A, B, C and D. The "Official Comment" following the above quoted section of the Uniform Commercial Code states:

> "Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party. If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time."

It follows that there was no agreement by the plaintiff to submit its claim for breach of the contract to arbitration in New York and, therefore, the New York court was without jurisdiction to enter the judgment upon which the defendant relies. Consequently, this judgment was not entitled to full faith and credit in the Superior Court and the principle of *res judicata* does not apply to claims of the parties under the contract of sale.

While peremptory instructions on the issues submitted to the jury by the Superior Court would have been proper upon the evidence in the record, the submission of these issues upon the instructions given was not error prejudicial to the defendant.

The trial in the Superior Court being limited to the defendant's plea in bar, evidence as to the quality of the yarn delivered by the defendant was not relevant to any question for determination in this trial. However, the defendant introduced, through the New York judgment roll, its contention that the yarn delivered conformed to the contract. We find no prejudicial error in the rulings of the Superior Court whereby the plaintiff was

allowed to explain that its failure to pay the contract price was due to its contention that the yarn was defective. The exclusion of such evidence could not reasonably have led to a different result as to the defendant's plea in bar.

No error.