In the Matter of the Arbitration between
**JOHN THALLON & CO., INC.,**
Petitioner,
and
**M & N MEAT COMPANY, Respondent.**
No. 74 C 1832.

United States District Court,
E. D. New York.
June 27, 1975.

Kommel, Rogers, Lorber & Shenkman, New York City, for petitioner.

Kaufman & Kaufman, New York City, for respondent.

## OPINION

PLATT, District Judge.

By motion dated March 11, 1975, M & N Meat Company (hereinafter "Respondent") seeks to dismiss a petition to compel arbitration of John Thallon & Co., Inc. (hereinafter "Petitioner") on the grounds of (1) forum non conveniens, (2) improper party respondent, and (3) that respondent never agreed to arbitrate its disputes with petitioner or, in the alternative, to transfer the hearing on the petition to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. §

1404. Petitioner cross-moves for an order pursuant to 9 U.S.C. § 4 compelling the parties to arbitrate their disputes before the American Arbitration Association in New York City.

## FACTS

Petitioner, a New York corporation with offices in Rockville Centre, New York, is engaged in the business of importing and exporting foreign and domestic frozen meat and has done so in the New York City and metropolitan area for a number of years.

Respondent, a Pennsylvania corporation, is a meat broker with offices at 201 Penn Center Boulevard, Pittsburgh, Pennsylvania. M & N Trading Company, also a Pennsylvania corporation located at the same address, is a subsidiary of respondent which buys and resells meat to respondent for resale to others.

On January 28, 1974, as set forth in respondent's affidavit, M & N Trading Company contracted by telephone through Hess-Stephenson Co., a meat broker located in Chicago, Illinois, to purchase from the petitioner one load (approximately 15 tons) of frozen Australian cow meat.

Hess-Stephenson sent a document entitled Confirmation, dated January 28, 1974, to both parties stating the terms of the sale as follows:

| | |
|---|---|
| Sold to—— | M & N Meat Company |
| Bought From—— | John Thallon & Company, Inc. |
| 15 Long Tons | Frozen Boneless Australian Cow Crops |
| | Steiger Production |
| | 60# Even Weight Cartons |
| | 85% Lean by Chemical Analysis |
| Price——89½¢ | X Dock SS Act III Philadelphia, Pa. |

On January 28, 1974, petitioner sent to respondent a document described as a "contract of sale", although not so entitled, setting forth essentially the terms above but with additional terms on the reverse side which will be hereinafter discussed. On January 29, 1974, M & N Trading Co., (not respondent) sent a "Purchase Order" directly to petitioner setting forth the terms of the agreement as 1 Load Steiger (sic) Crops, price 3.-

3950 X D, ship via Act III with the request that the purchase be invoiced to M & N Trading Company.

On the reverse side of petitioner's "Contract of Sale" are 12 additional terms which the respondent claims it never agreed to. The pertinent provisions are as follows:

"1) This contract shall not bind the Seller until signed and returned to Seller and unless returned within 10 days of the date hereof.

\*      \*      \*      \*      \*      \*

3) This contract contains no guarantees, warranties or representations except as expressly set forth herein and can be modified or rescinded only by a writing signed by both parties.

\*      \*      \*      \*      \*      \*

8) This contract and the rights of the parties hereunder shall be governed by the laws of New York.

9) In the event of dispute, Seller shall have the option of submitting same to arbitration in the City of New York, same to be conducted under the commercial rules of the American Arbitration Association and any determination made by such Arbitrator shall be final and binding, not subject to review and a judgment may be entered pursuant thereto; or Seller may pursue any other remedy including litigation. Buyer consents to the jurisdiction of the courts of the State of New York and consents that any process issuing out of such court may be served upon it by registered or certified mail sent to it at the address on the reverse side of this contract and such service shall by [sic] sufficient to confer personal jurisdiction on such court. The cost of arbitration or litigation including attorneys' fees of 15% of amount in dispute shall be paid by the party against whom the dispute is resolved.

\* \* \* \* \* \*

11) In the event buyer claims imported meat covered by this contract is less than 85% chemical lean, seller has right to arrange independent chemical testing.

Should the product test less than 85% chemical lean, seller will allow for excess fat content at invoice price and buyer will accept such as full settlement."

Respondent's affidavit states that (page 4) respondent rejected the meat for having a fat content in excess of the 15% limitation. An independent testing laboratory conducted tests and found the fat content of the meat in question to be 17.07%. Petitioner was forced to sell the rejected meat in the open market for a loss.

On March 6, 1974, and prior to respondent's rejection of the January 28, 1974 shipment, respondent placed a telephone order with petitioner for a second shipment of meat. This was arranged without the aid of a broker and petitioner sent its "usual contract of sale" to respondent on the above date with respondent's "purchase order" apparently being sent on the same date.

Petitioner's "contract of sale" contains the following terms: Approx. 15 Tons, Frozen Australian Shank Meat, MFG grade 85% Chemical Lean, at 93 cents per pound, Ex Dock Philadelphia, to be shipped via Australia Endurance. In addition, a provision stating "Subject to Steamer delay" appears on the face of the contract under the word Delivery as well as the same conditions on the reverse side as the prior "contract of sale."

Respondent's "purchase order" contains only the following terms: 1 Load Meat Tex Production—Australian Shank Meat, 93XD Philadelphia, Ship Via Austral Endurance, to arrive 4/26/74. Respondent refused to accept the meat claiming that delivery was not timely. Upon such refusal, petitioner again was forced to resell in the open market sustaining a market loss.

Pursuant to item #9 of petitioner's "contract of sale", separate demands for arbitration were served on respondent on June 19, 1974. Both claims have been consolidated. Respondent has refused to acknowledge the existence of the contracts of sale and has refused to arbitrate the disputes to date.

### ARBITRATION CLAUSE

Petitioner's major contention is that under the Uniform Commercial Code, N.Y. § 2–207 (hereinafter § 2–207), its "contracts of sale" were definite and seasonable acceptances of respondent's oral purchase orders and that the arbitration clauses contained therein were additional terms which should be construed as having become part of the contracts. Respondent simply contends that the arbitration provisions were never agreed to, are material alterations of the agreement and as such do not become part of the contract.

Section 2–207 provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract of sale although the writings of the par-

ties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act."

In the case at bar, the exchange of forms and other actions by the parties discussed herein clearly establish the existence of a contract under § 2–207 and that the arbitration clause contained in petitioner's "contract of sale" was an additional term therein. *Just Born v. Stein,* 59 Pa.D & C 407 (13 UCC Rep. 431) (1971).

The Uniform Commercial Code, Comment 2 to § 2–207, provides:

"2. Under this Article a proposed deal which in commercial understanding has in fact been closed is recognized as a contract. Therefore, any additional matter contained either in the writing intended to close the deal or in a later confirmation falls within subsection (2) and must be regarded as a proposal for an added term unless the acceptance is made conditional on the acceptance of the additional terms."

■ There is no language in petitioner's "contract of sale" expressly conditioning its acceptance. In addition, the actions of the parties in arranging for shipping, delivery and inspection of the goods manifested a commercial understanding that a contract existed. *Just Born v. Stein, supra.*

The pleadings indicating the parties are merchants under § 2–104(a), the arbitration clause becomes a part of the contract unless it violates one of the subsections of § 2–207(2).

Subsections (2)(a) and (2)(c) of § 2–207 do not prevent the inclusion of the arbitration clause. There is no provision in respondent's order form which expressly limits the acceptance to the terms of the offer to purchase to invoke § 2–207(2)(a). Likewise, respondent made no objection to the additional

clause as prescribed by subsection 2–207(2)(c). *Just Born v. Stein, supra.*

■ The central issue to be determined by this Court is whether the arbitration clause is a "material alteration" of the contract within the terms of subsection 2–207(2)(b).

Respondent does not mention § 2–207 of the Uniform Commercial Code but rather relies upon a series of pre-code cases which require agreement on all terms of a contract for it to be binding. (See, *Fox v. Cavalcade Fabrics,* 115 N.Y.S.2d 65, 66 (N.Y.Co.1950), *aff'd* 280 App.Div. 769, 113 N.Y.S.2d 474 (1st Dept. 1952); *Ray Proof Corporation v. Buffalo Gravel Corp.,* 5 A.D.2d 823, 170 N.Y.S.2d 657, 658 (1st Dept. 1958); *Benjamin v. Arundel Corp.,* 270 App. Div. 766 (2d Dept. 1946), 59 N.Y.S.2d 437, 438).

Suffice it to say, that the Uniform Commercial Code with Section 2–207 "altered the 'ribbon matching' or 'mirror' rule of common law, under which the terms of an acceptance or confirmation were required to be identical to the terms of the offer or oral agreement, respectively." 1 W. Hawkland, A Transactional Guide to the Uniform Commercial Code § 1.090303, at 16 (1964); R. Nordstrom, Handbook of the Law of Sales, Sect. 37, at 99–100; *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161 (6th Cir. 1972).

Respondent's second argument that the "contracts of sale" were never signed is also incorrect. An agreement in writing sufficient for enforcement as an agreement to arbitrate disputes does not have to be signed or subscribed to by the parties. *Fisser v. International Bank,* 282 F.2d 231, 233 (2d Cir. 1960); *Bigge Crane and Rigging Co. v. Docutel Corp.,* 371 F.Supp. 240 (E.D.N.Y.1973); *Ocean Industries, Inc. v. Soros Associates International, Inc.,* 328 F.Supp. 944, 947 (S.D.N.Y.1971); *Matter of Helen Whiting,* 307 N.Y. 360, 121 N.E.2d 367 (1954); *Trafalgar Square, Ltd. v. Reeves Brothers, Inc.,* 35 A.D.2d 194, 315 N.Y.S.2d 239 (1st Dept. 1970).

Petitioner relies upon a series of cases compelling arbitration where the party sought to be charged (i) signed the contract, *Matter of Helen Whiting, Inc., supra;* (ii) accepted and used the goods without payment, *Trafalgar Square, Ltd. v. Reeves Brothers, Inc., supra;* (iii) accepted and paid for a substantial portion of the goods, *Braten Apparel Corp. v. Rutger Fabrics Corp.,* 35 A.D.2d 921, 318 N.Y.S.2d 771 (1st Dept. 1970); *Silverstyle v. Aero-Knit Mills, Inc.,* [11 UCC 292] (1972); or (iv) accepted the goods and signed the contract, *Wayne Weaver Mills, Inc. v. Coit International, Inc.,* [10 UCC 1172] (1972); *Southeastern Enameling v. General Bronze,* [8 UCC 469] (1970).

"While an order form containing an arbitration clause need not be signed by the buyer to bind him to arbitration, it must be shown that by conduct the buyer did so agree to be bound (Matter of Helen Whiting Incorporated [Trojan Textile Corporation], 307 N.Y. 360, 368, 121 N.E.2d 367, 368). *The acceptance of goods delivered under an order containing a provision for arbitration could be considered an agreement on the part of the buyer to resolve disputes in the arbitral forum.*" (Emphasis added.) *In re Baroque Fashions, Inc.,* 19 A.D.2d 873, 244 N.Y.S.2d 118, 119 (1st Dept. 1963).

In this case, respondent neither accepted, paid for or used any of the goods in question but rather in the first shipment inspected the goods, which was perfectly proper under Uniform Commercial Code § 2–513, and rejected the same upon delivery (see Petitioner's affidavit para. 10); according to respondent for nonconformity of fat content under the contract terms (see Respondent's exhibits A & C) and according to petitioner to enable respondent to secure a lower price in the open market. The second order was rejected for failure to deliver on time (Petitioner's affidavit para. 12).

Courts have encountered problems in interpreting § 2–207. The Section has been described as a "murky bit of prose," *Southwest Engineering Co. v. Martin Tractor Co.,* 205 Kan. 684, 694, 473 P.2d 18, 25 [7 UCC Rep. 1288, 1299] (1970), as "not too happily drafted," *Roto-Lith Ltd. v. F. P. Bartlett & Co.,* 297 F.2d 497, 500 [1 UCC Rep. 73, 76] (1st Cir. 1962). *Dorton v. Collins & Aikman Corp., supra,* 453 F.2d p. 1165. The official comment to § 2–207 provides examples of terms which would and would not materially alter a contract; an arbitration clause is listed under neither. (UCC § 2–207, Off.Com. #4 and #5.). *Dorton v. Collins & Aikman Corp., supra,* footnote #8. We believe the question of material alteration rests on the facts of each case. See *American Parts Co. v. American Arbitration Ass'n,* 8 Mich.App. 156, 171, 154 N.W.2d 5, 14 [6 UCC Rep. 119, 130] (1967); *Dorton v. Collins & Aikman Corp., supra.*

Given the circumstances in this case, the Court feels that the application of § 2–207(2)(b) to an arbitration provision is best explained in *Application of Doughboy Industries, Inc.,* 17 A.D.2d 216, 233 N.Y.S.2d 488 [1 UCC Rep. 77] (1962). The Appellate Division, First Department, in that case ruled that an arbitration clause contained in seller's form but not in the buyer's was a "material alteration" under § 2–207(2)(b), and as such did not become a part of the contract between the parties. The Court's conclusion was based on the settled principle in New York that "[an] agreement to arbitrate must be [clear and] direct and the intention made clear, without implication, inveiglement or subtlety." *Application of Doughboy Industries, supra,* p. 492. Further, the Court stated:

"It follows then that the existence of an agreement to arbitrate should not depend solely upon the conflicting fine print of commercial forms which cross one another but never meet  .  .  ." (*Id.* p. 493).

The *Doughboy* interpretation has been followed in more recent New York cases: *In re Barclay Knitwear,* 8 UCC Rep. 44 (1970); *Empire Steel Trading Co. v. Parson & Crosland, Ltd.,* 5 UCC Rep. 1180 (1969); *Application of Chemoleum Corporation,* 22 A.D.2d 865, 254 N.Y.S. 2d 424 (1964), as well as in other states; *Medical Development Corp. v. Industrial Molding Corp.,* 479 F.2d 345 [12 UCC Rep. 805] (10th Cir. 1973); *Frances Hosiery Mills, Inc v. Burlington Industries, Inc.,* 285 N.C. 344, 204 S.E. 2d 834 [14 UCC Rep. 1110] (1974); *Just Born, Inc. v. Stein, Hall & Co., Inc.,* 59 Pa.D & C 407 [13 UCC Rep. 431] (1971); *Windsor Mills, Inc. v. Collins & Aikman Corp.,* Cal.Ct. of App. 2d Dist. [10 UCC Rep. 1020] (1972).

Petitioner's second argument to compel arbitration concerns § 2–201 of the Uniform Commercial Code which provides in part:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless

. . .

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) [the Statute of Frauds] against such party unless written notice of objection to its contents is given within ten days after it is received."

The Court is not persuaded by this argument. Section 2–201(2) merely defines formal requirements necessary to satisfy the Statute of Frauds. (See Uniform Commercial Code, Comment No. 3). Compliance with the Statute of Frauds is not the issue here; it is whether the arbitration provision in Petitioner's "contract of sale" constituted an agreement to arbitrate under 9 U.S. C. §§ 3 and 4. *Windsor Mills, Inc. v. Collins & Aikman Corp., supra,* p. 1027.

For the foregoing reasons respondent's motion to dismiss the petition herein is granted and petitioner's cross motion to compel arbitration pursuant to 9 U.S.C. § 4 is denied. Since petitioner's petition to compel arbitration is dismissed, respondent's requests for transfer pursuant to 28 U.S.C. § 1404(a) are therefore moot.

Settle order.