**SUPAK & SONS MANUFACTURING COMPANY, INC., Plaintiff,**

v.

**PERVEL INDUSTRIES, INC., Defendant.**

Nos. 76–0022–Civ–2, 76–0023–Civ–2.

United States District Court,
E. D. North Carolina,
Elizabeth City Division.

March 17, 1978.

L. P. Hornthal, Jr., LeRoy, Wells, Shaw, Hornthal, Riley & Shearin, Elizabeth, City, N. C., for plaintiff.

John V. Hunter, III, Hunter & Wharton, Raleigh, N. C., for defendant.

## MEMORANDUM OF DECISION AND ORDER

DUPREE, District Judge.

These actions were consolidated for all purposes in the court's order of April 7, 1977, and in that order the court denied plaintiff's motion for summary judgment in No. 76–0023–Civ–2 in which plaintiff had sought a declaratory judgment determining that the matters in controversy in No. 76–0022–Civ–2 are not subject to arbitration. The order was entered without prejudice to the rights of the parties to bring the question on for further consideration or determination in a summary manner "upon clarification of the facts in dispute and the applicable law".

Pursuant to the privilege thus extended the defendant, Pervel Industries, Inc., filed a motion to compel arbitration supported by affidavits of various of its officers and employees tending to show that each of plaintiff's oral orders from defendant of the textile merchandise which is the subject of the litigation was followed by a written confirmation of the purchase mailed by defendant in conformity with its unvarying business practice on the reverse side of which appeared an agreement for arbitration reading as follows:

"Any controversy arising out of or relating to this contract shall be settled by arbitration in the City of New York in accordance with the rules then obtaining of the American Arbitration Association or the General Arbitration Council of the Textile Industry whichever shall be first selected by the party instituting said arbitration. The arbitrators sitting in any such controversy shall have no power to alter or modify any express provisions of this contract, including without limitation, the provisions of paragraph 6 applicable to Claims or to render any award which by its terms effects any such alteration or modification. The parties consent to the jurisdiction of the Supreme Court of the State of New York, and of the United States District Court for the Southern District of New York, for all purposes in connection with said arbitration. The parties further consent that any process or notice of motion or other application to either of said courts or a judge thereof, may be served outside the state or Southern District of New York by registered mail or by personal service provided a reasonable time for appearance is allowed, or in such manner as may be permissible under the rules of said court."

Paragraph 6 of the "terms of contract" which the arbitrators are expressly forbidden by the arbitration provision to alter or modify reads as follows:

"CLAIMS: All claims of any kind or nature are barred unless made in writing by the Buyer to the Seller within fifteen (15) days after invoice date for patent defects and thirty (30) days after invoice date for latent defects. Notwithstanding the foregoing, the cutting or the processing in any manner of any merchandise delivered under this contract constitutes acceptance of the same and a waiver of any claim for defect. Buyer shall, together with its notice of claim, offer Seller in writing prompt opportunity to examine the merchandise and Seller may replace defective merchandise within a reasonable time. If not so replaced, the limit of liability of Seller for defective merchandise shall be the difference in value on the contract date of delivery between the merchandise specified and the merchandise actually delivered and the liability of seller for late delivery or non-delivery shall be the difference, if any, between the contract price and the fair market price on the contract date of delivery of the merchandise to be delivered, provided Buyer actually purchases the same merchandise elsewhere at said fair market price. In no event shall buyer be entitled to consequential, indirect and/or special damages of any nature for defective merchandise or late delivery or non-delivery or otherwise, and in no instance may damages include loss of profit on contemplated use or profit of any description."

Other provisions of the "terms of contract" limiting the rights of the borrower

include a provision relating to warranties which reads in pertinent part as follows:

"Buyer agrees that there is no warranty by Seller, in fact or in law, that the merchandise which is the subject of this sale is suitable for any particular use or purpose, specific length of time or measure of service unless expressly provided for on the face hereof or acknowledged by the Seller in writing prior to the delivery of any goods and in the absence thereof, Buyer undertakes the complete and entire responsibility of ascertaining whether the goods delivered hereunder meet the requirements of or are suitable for Buyer's intended use. Warranty of merchantability is limited only to goods sold as first quality. Seller shall not be liable for normal manufacturing defects nor for customary variations from quantities or specifications. The physical or chemical characteristics or qualities are not guaranteed unless and except to the extent specifically provided for herein."

Plaintiff has not filed a formal response to defendant's motion to compel arbitration, choosing instead to rely on its previous submissions in support of its motion for summary judgment which, as stated before, was provisionally denied. In these submissions the plaintiff has included sworn affidavits denying that it ever received any of the "sales notes" containing the arbitration and other provisions referred to above and denying, contrary to defendant's allegations, that there is any custom in the textile trade that disputes such as that involved here are customarily settled by arbitration. Both sides agree that the subject of arbitration was never at any time discussed orally between the parties in connection with or prior to the purchases which gave rise to plaintiff's claim.[1]

The defendant has not been able to produce a witness who can testify of his own knowledge that the written confirma-

tions of purchase containing the arbitration and other provisions were actually mailed to the plaintiff but has been obliged to rely on evidence of its employees showing such mailing to have been defendant's unvarying business practice. For purposes of decision the court has assumed that this evidence when arrayed against the plaintiff's evidence of non-receipt would at least serve to create a genuine issue as to this material fact, and insofar as plaintiff's motion for summary judgment was based on its contention that there was no arbitration agreement, the same was properly denied. Equally stressed by plaintiff, however, has been its contention that even if the confirmatory written memorandum containing an arbitration clause was sent to the plaintiff, it constituted a material alteration of the oral contract between the parties and was therefore unenforceable under the provisions of Section 2–207 of the Uniform Commercial Code as embodied in N.C.G.S. § 25–2–207 which provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) the offer expressly limits acceptance to the terms of the offer;

"(b) they materially alter it; or

"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is suf-

---

1. The court notes in passing that assuming the "sales notes" containing on the reverse side the "terms of contract" were in fact mailed by defendant to the plaintiff, it would have been very easy for the arbitration provision to have escaped the plaintiff's notice. This is so because the front page of the "customer copy" of the sales note form was printed in black, boldface type while the reverse side containing the "terms of contract" was printed with dull gray ink in fine print which occupied the entire reverse side of an 8″ × 11″ sheet, the arbitration agreement being located in the lower right-hand corner.

ficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter."

In support of its position the plaintiff cites and relies on *Frances Hosiery Mills, Inc. v. Burlington Industries, Inc.*, 285 N.C. 344, 204 S.E.2d 834 (1974). In that case, as in the case here, plaintiff placed orders to defendant by telephone for textile merchandise, neither side mentioning arbitration of possible disputes. Following each order the defendant sent invoices to the plaintiff confirming the terms agreed upon orally the reverse side of which contained an arbitration clause. Although plaintiff admitted receiving the invoices without objection, the court held that the arbitration clause was a material alteration of the oral contract and was not enforceable against the plaintiff.

"Obviously, under the oral contract, the plaintiff was entitled to present to the courts of North Carolina such claims as it may have against the defendant for breach of that contract. Under the alleged additional term, it could not do so but would be confined to a presentation of its claim to a board of arbitration in New York. Beyond question, such a change in the contract would be a material alteration of it. Consequently, such proposed additional provision may not be deemed incorporated into the contract for sale of yarn between these parties by reason of the mere silence of the plaintiff following its receipt of the [invoices]." 285 N.C. at 357, 204 S.E.2d at 842.

The law in New York where plaintiff's telephone orders were accepted is apparently in accord with this North Carolina law. *John Thallon & Company v. M & N Meat Company*, 396 F.Supp. 1239 (E.D.N.Y.1975); *Application of Doughboy Industries, Inc.*, 17 A.D.2d 216, 233 N.Y.S.2d 488 (1962).

Defendant has sought to distinguish these cases on the ground that they do not involve disputes in the textile industry "where nearly all disputes are settled by arbitration" citing *Helen Whiting, Inc. v. Trojan Textile Corporation*, 307 N.Y. 360, 367, 121 N.E.2d 367, 370 (1954), where it is said:

"From our own experience, we can almost take judicial notice that arbitration clauses are commonly used in the textile industry . . ."

As previously noted, plaintiff and defendant are at odds on the question of whether there is a custom in the textile trade to arbitrate disputes, and far from judicially noticing any such custom, this court is not able to find from a preponderance of the evidence presently before it that there is any such custom.

Be this as it may, the problem with defendant's position lies not merely in the presence of an arbitration clause in its printed confirmation of order forms but in the provisions of the arbitration agreement itself and all that it encompasses. Reference to the arbitration provision reveals that the arbitrators to be selected thereunder are so limited by the other "terms of contract" incorporated by reference that even in a case where a customer of the defendant has accepted the agreement and a dispute arises, there is very little that the arbitrators are free to arbitrate. For instance, under paragraph 6 of the "terms of contract" which the arbitrators are expressly forbidden to alter or modify, all of this plaintiff's claims were barred the moment the plaintiff cut and processed in any manner any merchandise delivered under the contract and in any event after thirty days from the invoice date. While a substantial part of plaintiff's claim is for consequential, indirect and special damages, such damages may not be allowed by the arbitrators under paragraph 6. Furthermore, while plaintiff's claim is based on express warranties derived from defendant's advertising brochures and implied warranties of merchantability, another provision of the "terms of contract" binding on the arbitrators is the buyer's agreement "that there is no warranty by Seller, in fact or in law, that the merchandise which is the subject of this

sale is suitable for any particular use or purpose, specific length of time or measure of service unless expressly provided for on the face hereof or acknowledged by the Seller in writing prior to the delivery of any goods. . . ."

The conclusion is that regardless of whether the plaintiff received the documents containing the arbitration clause, when the clause is read in conjunction with the other terms of contract so sharply limiting the matters which might become the subject of arbitration, it must be regarded as such a material alteration of plaintiff's oral contract of purchase that it did not become binding on the plaintiff who never recognized, acknowledged or signed an agreement that its oral contract should be so amended or modified. It follows, then, that defendant's motion to compel arbitration must be and is hereby denied, and the case will stand for trial in this court at the next ensuing civil session to be convened at Elizabeth City.

SO ORDERED.