C. ITOH & CO. (AMERICA) INC., A New York Corporation, Plaintiff-Appellee,

v.

The JORDAN INTERNATIONAL COMPANY, Defendant-Appellant.

No. 76–1707.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1977.

Decided April 4, 1977.

Stanley J. Adelman, Chicago, Ill., for defendant-appellant.

Paul M. Levy, Richard A. Schulman, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SPRECHER and WOOD, Circuit Judges.

SPRECHER, Circuit Judge.

The sole issue on this appeal is whether the district court properly denied a stay of the proceedings pending arbitration under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3.

I

C. Itoh & Co. (America) Inc. ("Itoh") submitted a purchase order dated August 15, 1974 for a certain quantity of steel coils to the Jordan International Company ("Jordan"). In response, Jordan sent its acknowledgment form dated August 19, 1974. On the face of Jordan's form, the following statement appears:

> Seller's acceptance is, however, expressly conditional on Buyer's assent to the additional or different terms and conditions set forth below and printed on the reverse side. If these terms and conditions are not acceptable, Buyer should notify seller at once.

One of the terms on the reverse side of Jordan's form was a broad provision for arbitration.[1] Itoh neither expressly assented nor objected to the additional arbitration term in Jordan's form until the instant litigation.

Itoh also entered into a contract to sell the steel coils that it purchased from Jordan to Riverview Steel Corporation, Inc. ("Riverview"). The contract between Itoh and Riverview contained an arbitration term which provided in pertinent part:

> Any and all controversies arising out of or relating to this contract, or any modification, breach or cancellation thereof, ex-

cept as to quality, shall be settled by arbitration. . . .

After the steel had been delivered by Jordan and paid for by Itoh, Riverview advised Itoh that the steel coils were defective and did not conform to the standards set forth in the agreement between Itoh and Riverview; for these reasons, Riverview refused to pay Itoh for the steel. Consequently, Itoh brought the instant suit against Riverview and Jordan. Itoh alleged that Riverview had wrongfully refused to pay for the steel; as affirmative defenses, Riverview claimed that the steel was defective and that tender was improper since delivery was late. Itoh alleged that Jordan had sold Itoh defective steel and had made a late delivery of that steel.

Jordan then filed a motion in the district court requesting a stay of the proceedings pending arbitration under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. The district court concluded that, as between Itoh and Riverview, the issue of whether the steel coils were defective was not referable to arbitration because of the "quality" exclusion in the arbitration provision of the contract between Itoh and Riverview. Since arbitration would not necessarily resolve all the issues raised by the parties, the district court, apparently assuming arguendo that there existed an agreement in writing between Jordan and Itoh to arbitrate their dispute, denied the stay pending arbitration. In the district court's opinion, sound judicial administration required that the entire litigation be resolved in a single forum; since some of the issues—those relating to quality between Itoh and Riverview—were not referable to arbitration, this goal could only be accomplished in the judicial forum.

■ It is from this denial of a stay pending arbitration that Jordan appeals.[2]

---

1. The arbitration clause provides:

Any controversy arising under or in connection with the contract shall be submitted to arbitration in New York City in accordance with the rules then obtaining of the American Arbitration Association. Judgment on any award may be entered in any court having jurisdiction. The parties hereto submit to the jurisdiction of the Federal and State courts in New York City,

and notice of process in connection with arbitral or judicial proceedings may be served upon the parties by registered or certified mail, with the same effect as if personally served.

2. Since the underlying lawsuit is an action at law, the denial of the stay pending arbitration is appealable under 28 U.S.C. § 1292(a)(1). See Baltimore Contractors v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); Zell v.

## II

Our inquiry begins with the question of whether, assuming *arguendo* that there existed an agreement in writing between Jordan and Itoh to arbitrate *their* dispute, the district court had the discretion under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, to deny Jordan's request for a stay pending arbitration of that dispute on the ground that sound judicial administration requires resolution of the entire lawsuit in a single forum and at least some of the disputed issues between Itoh and Riverview were not referable to arbitration.

> Section 3 of the federal statute provides:
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration (emphasis added).

■ The use of the word "shall" rather than "may" in Section 3 indicates that a district court, when presented with an application for a stay of proceedings pending arbitration, must grant the requested stay where two conditions are satisfied: (1) the issue is one which is referable to arbitration under an agreement in writing for such arbitration, and (2) the party applying for the stay is not in default in proceeding with such arbitration. As the Supreme Court held in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967):

> [I]n passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. In so concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.

■ Considerations of judicial economy bear no relation to "the making and performance of an agreement to arbitrate," and to permit a district court to deny a stay pending arbitration based on such discretionary considerations would, in our opinion, frustrate the strong federal policy in favor of arbitration which is expressed in the Federal Arbitration Act as interpreted by the Supreme Court. This conclusion is supported by the First Circuit's decision in *Hilti, supra*. In that case, the district court had denied a stay pending arbitration because, *inter alia*, one of the defendants was not a party to the arbitration agreement. In summarily rejecting this basis for the district court's decision, Judge Coffin stated:

> Appellee did not—wisely, we think—attempt to support this basis for decision in brief or argument. If arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised. *Id.* at 369 n.2.

*See also Acevedo Maldonado v. PPG Industries, Inc.*, 514 F.2d 614 (1st Cir. 1975); *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F.Supp. 1146 (S.D.N.Y.1973).

■ Accordingly, we hold that if Jordan was otherwise entitled to a stay pending

---

*Jacoby-Bender, Inc.*, 542 F.2d 34 (7th Cir. 1976); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161 (6th Cir. 1972); *Hilti, Inc. v. Oldach*, 392 F.2d 368 (1st Cir. 1968). Itoh's contention that, although ordinarily the denial of a stay pending arbitration would be appealable, it is not appealable where, as here, the district court never determined whether there existed a writ-

ten agreement to arbitrate between Jordan and Itoh is completely without merit. Whether there exists such a written arbitration agreement is relevant to the question of whether the district court properly denied the stay but not to the question of whether its order is appealable.

arbitration of its dispute with Itoh under Section 3 of the Federal Arbitration Act, it was error to deny its application on the ground that the controversy between Itoh and Riverview had to be resolved in the judicial, not the arbitral, forum.

### III

Having concluded that the district court had no discretion under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, to deny Jordan's timely application for a stay of the action pending arbitration *if* there existed an agreement in writing for such arbitration between Jordan and Itoh, the remaining issue is whether there existed such an agreement.

The pertinent facts may be briefly restated. Itoh sent its purchase order for steel coils to Jordan which contained no provision for arbitration. Subsequently, Jordan sent Itoh its acknowledgment form which included, *inter alia*, a broad arbitration term on the reverse side of the form.[3] On the front of Jordan's form, the following statement also appears:

> Seller's acceptance is . . . expressly conditioned on Buyer's assent to the additional or different terms and conditions set forth below and printed on the reverse side. If these terms and conditions are not acceptable, Buyer should notify Seller at once.

After the exchange of documents, Jordan delivered and Itoh paid for the steel coils. Itoh never expressly assented or objected to the additional arbitration term in Jordan's form.

In support of its contention that there exists an agreement in writing to arbitrate, Jordan places some reliance on certain New York decisions interpreting Section 2–201 of the Uniform Commercial Code, the UCC Statute of Frauds provision. That section provides in pertinent part:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . . .

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

Several New York lower court decisions have apparently held that under Section 2–201, where there has been an oral offer or agreement followed by a written confirmation containing an additional arbitration term and where the merchant recipient of the confirmation has reason to expect that a provision for arbitration would be included in any written confirmation of an oral offer or agreement, the arbitration provision becomes a part of the parties' agreement unless notice of objection is given within the prescribed period. *See, e. g., Trafalgar Square, Ltd. v. Reeves Brothers, Ltd.*, 35 A.D.2d 194, 315 N.Y.S.2d 239 (1970); *In re Wolfkill Feed & Fertilizer Corp.*, 16 UCC Rep.Serv. 1188 (N.Y.Sup.Ct. 1975); *In re Dalil Fashions, Inc.*, 12 UCC Rep.Serv. 478 (N.Y.Sup.Ct.1973).

■ These decisions are premised on a fundamental misconception of the purpose and effect of Section 2–201. *See generally* Duesenberg & King, Sales and Bulk Transfers Under the Uniform Commercial Code § 308[1] at 97–99 (1976). The *only* effect of a failure to object to a written confirmation of an oral offer or agreement under Section 2–201 is to take away from the receiving

---

**3.** *See* note 1 *supra*. There is apparently no dispute that, if the arbitration provision is part of a written agreement between the parties, it is sufficiently broad to encompass the instant dispute. Therefore, under 9 U.S.C. § 3, if there was an "agreement in writing for . . . ar-

bitration," arbitration should be directed since the underlying controversy is an "issue referable to arbitration" and there is no contention by Itoh that Jordan is "in default in proceeding with such arbitration."

merchant the defense of the Statute of Frauds. *See* Official Comment 3 to Section 2–201. *See also Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App.3d 987, 101 Cal.Rptr. 347 (1972); *American Parts Co. v. American Arbitration Ass'n.*, 8 Mich.App. 156, 154 N.W.2d 5 (1968); *John Thallon & Co. v. M&N Meat Co.*, 396 F.Supp. 1239 (E.D.N.Y.1975). Although Section 2–201 may make *enforceable* an oral agreement which was in fact reached by the parties, it does not relieve the party seeking enforcement of the alleged oral agreement of the obligation to prove its existence. Official Comment 3 to Section 2–201. Section 2–201 obviously cannot be relied on to make a particular term, such as a provision for arbitration, binding on a party if that section does not even serve to establish the *existence* of an agreement.

■ The Official Comments make clear that, while under Section 2–201 the failure to object to a written confirmation of an oral agreement has the limited effect of removing the Statute of Frauds as a bar to the enforceability of an oral agreement, under Section 2–207 a failure to object to a term in a written confirmation may, *under the circumstances specified by that section,* have the effect of making that term a part of, whatever agreement is proved to have been reached by the parties. Official Comment 3 to Section 2–201. Hence, once the existence and terms of an alleged oral agreement have been established, it is necessary to refer to Section 2–207, Additional Terms in Acceptance *or Confirmation,* not Section 2–201, to ascertain whether a term included in a written confirmation but not in the parties' oral agreement is binding on the recipient of the written confirmation. *See, e. g., Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161 (6th Cir. 1972); *American Parts, supra ; Frances Hosiery Mills, Inc. v. Burlington Industries, Inc.*, 285 N.C. 344, 204 S.E.2d 834 (1974); *Medical Development Corp. v. Industrial Molding Corp.*,

479 F.2d 345 (10th Cir. 1973). See also White & Summers, Uniform Commercial Code 30 (1972); Davenport, *How To Handle Sales Of Goods: The Problem Of Conflicting Purchase Orders And Acceptances And New Concepts In Contract Law,* 19 Bus.Law 75, 81–82 (1963).

■ However, even if we assume that New York's highest court would adhere to those lower court decisions and their extremely questionable application of the Statute of Frauds to situations where a party has added an arbitration term to a written *confirmation* of an *oral* offer or agreement, this is not such a situation. Jordan does not suggest that its acknowledgment form was simply a *confirmation* of a prior *oral* offer or agreement. Rather, Jordan's argument is that *the exchange of forms* between itself and Itoh *created* a contract, which includes the additional arbitration term in Jordan's form.

The instant case, therefore, involves the classic "battle of the forms," and Section 2–207, not Section 2–201, furnishes the rules for resolving such a controversy. Hence, it is to Section 2–207 that we must look to determine whether a contract has been formed by the exchange of forms between Jordan and Itoh and, if so, whether the additional arbitration term in Jordan's form is to be included in that contract. *See, e. g., Application of Doughboy Industries, Inc.*, 17 A.D.2d 216, 233 N.Y.S.2d 488 (1962); *In re Tunis Manufacturing Corp.*, 20 UCC Rep.Serv. 284 (N.Y.Sup.Ct.1976); *Tunis Manufacturing Corp. v. Mystic Mills, Inc.*, 40 A.D.2d 664, 337 N.Y.S.2d 150 (1972); *In re Barclay Knitwear Co.*, 8 UCC Rep.Serv. 44 (N.Y.Sup.Ct.1970); *Construction Aggregates Corp. v. Hewitt-Robins, Inc.*, 404 F.2d 505 (7th Cir. 1968); *Valmont Industries, Inc. v. Mitsui & Co.*, 419 F.Supp. 1238 (D.Neb.1976); *Just Born, Inc. v. Stein, Hall & Co.*, 13 UCC Rep.Serv. 431, 59 Pa.D&C 407 (1971); *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 206 N.W.2d 414 (1973).[4]

---

4. At least one New York trial court decision, relied on by Jordan, has apparently extended the above-discussed improper use of the Code's Statute of Frauds from the written confirmation of an *oral* agreement context to the "battle of the forms" context. *See Klockner v. C. Itoh & Co.*, 17 UCC Rep.Serv. 915 (N.Y.Sup.Ct. 1975). However, several considerations persuade us that the Court of Appeals, New York's highest court, would decide otherwise.

## IV

Section 2–207, Additional Terms in Acceptance or Confirmation, provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Under Section 2–207 it is necessary to first determine whether a contract has been formed under Section 2–207(1) as a result of the *exchange of forms* between Jordan and Itoh.

At common law, "an acceptance . . . which contained terms additional to . . . those of the offer . . . constituted a rejection of the offer . . . and thus became a counter-offer." *Dorton, supra,* at 1166. Thus, the mere presence of the additional arbitration term in Jordan's acknowledgment form would, at common law, have prevented the exchange of documents between Jordan and Itoh from creating a contract, and Jordan's form would have automatically become a counter-offer.

■ Section 2–207(1) was intended to alter this inflexible common law approach to offer and acceptance:

This section of the Code recognizes that in current commercial transactions, the terms of the offer and those of the acceptance will seldom be identical. Rather, under the current "battle of the forms," each party typically has a printed form drafted by his attorney and containing as many terms as could be envisioned to favor that party in his sales transactions. Whereas under common law the disparity between the fine-print terms in the parties' forms would have prevented the consummation of a contract when these forms are exchanged, Section 2–207 recognizes that in many, but not all, cases

In the first place, there are several New York decisions which have quite properly recognized that Section 2–207 is the section clearly intended to govern "battle of the forms" issues. *See, e. g., In re Wolfkill Feed & Fertilizer Corp., supra* ; *Mystic Mills, Inc., supra* ; *In re Barclay Knitwear Co., supra* ; *In re Tunis Manufacturing Corp., supra* ; *Application of Doughboy Industries, Inc., supra.* In the second place, while it is perhaps understandable that a court might erroneously refer to the Statute of Frauds to determine whether a term in a written confirmation of an *oral* offer or agreement is binding on the recipient of the confirmation, there is no logical, much less statutory, explanation for a reference to the Statute of Frauds where, as here, it is agreed that *no oral* transaction is at issue. Finally, and most importantly, one of the stated purposes of the Uniform

Commercial Code is "to make uniform the law among the various jurisdictions." Section 1–102(2)(c). It must be assumed, therefore, that the New York Court of Appeals would interpret Sections 2–201 and 2–207 with the interpretation given those sections by other jurisdictions in mind. The parties have not directed our attention to and we have been unable to discover *any* decision outside of New York which has held that the "battle of forms" is governed by the UCC Statute of Frauds provision, Section 2–201, not by Section 2–207, Additional Terms in Acceptance or Confirmation. We are convinced, therefore, that the Court of Appeals would not adopt an aberrant position, such as the one apparently set forth in *Klockner,* which has the effect of virtually reading Section 2–207 out of the Uniform Commercial Code.

the parties do not impart such significance to the terms on the printed forms. . . . Thus, under Subsection (1), a contract . . . [may be] recognized notwithstanding the fact that an acceptance . . . contains terms additional to . . . those of the offer . . .

*Id.* at 1166. *See also* Comment 2 to Section 2–207; *Air Products & Chemicals, supra*; *John Thallon, supra.* And it is now well-settled that the *mere presence* of an additional term, such as a provision for arbitration, in one of the parties' forms will not prevent the formation of a contract under Section 2–207(1). *See, e. g., Dorton, supra*; *Valmont Industries, supra*; *Just Born, supra*; *John Thallon, supra*; *In re Barclay Knitwear Co., supra*; *In re Tunis Manufacturing Corp., supra*; *Mystic Mills, supra*; *Air Products & Chemicals, supra.*[5]

■ However, while Section 2–207(1) constitutes a sharp departure from the common law "mirror image" rule, there remain situations where the inclusion of an additional term in one of the forms exchanged by the parties will prevent the consummation of a contract *under that section.* Section 2–207(1) contains a proviso which operates to prevent an exchange of forms from creating a contract where "acceptance is expressly made conditional on assent to the additional . . . terms." In the instant case, Jordan's acknowledgment form contained the following statement:

Seller's acceptance is . . . *expressly conditional* on Buyer's *assent* to the addi-

tional or different terms and conditions set forth below and printed on the reverse side. If these terms and conditions are not acceptable, Buyer should notify Seller at once.

The arbitration provision at issue on this appeal is printed on the reverse side of Jordan's acknowledgment, and there is no dispute that Itoh never expressly assented to the challenged arbitration term.

The Court of Appeals for the Sixth Circuit has held that the proviso must be construed narrowly:

Although . . . [seller's] use of the words "subject to" suggests that the acceptances were conditional to some extent, we do not believe the acceptances were "expressly made conditional on [the buyer's] assent to the additional or different terms," as specifically required under the Subsection 2–207(1) proviso. In order to fall within this proviso, it is not enough that an acceptance is expressly conditional on additional or different terms; rather, an acceptance must be expressly conditional on the offeror's *assent* to those terms (emphasis in original).

*Dorton, supra,* at .1168. In *Construction Aggregates Corp. v. Hewitt-Robins, Inc.,* 404 F.2d 505 (7th Cir. 1968), this court found that an acceptance came within the ambit of the Section 2–207(1) proviso even though the language employed in the acceptance did not precisely track that of the proviso. Under either *Construction Aggregates* or *Dorton,* however, it is clear that the statement contained in Jordan's acknowledgment form comes within the Section 2–207(1) proviso.[6]

---

**5.** *But see Roto-Lith, Ltd. v. F. P. Bartlett & Co.,* 297 F.2d 497 (1st Cir. 1962) (holding that inclusion of warranty disclaimer in seller's acknowledgment form prevented the formation of a contract under Section 2–207(1)). The *Roto-Lith* decision has been subjected to severe criticism by the commentators. *See, e. g., Duesenberg & King, supra,* at § 3.04[1]; White & Summers, *supra,* at 28; Davenport, *supra,* at 85. And, more importantly, *Roto-Lith* has not been followed in numerous decisions involving the "battle of the forms" under Section 2–207. *See, e. g.,* the cases cited in the text accompanying this note.

**6.** In *Gaynor-Stafford Industries, Inc. v. Mafco Textured Fibers,* 52 A.D.2d 481, 384 N.Y.S.2d

788, 19 UCC Rep.Serv. 740 (N.Y.Sup.Ct.1976), there appears to have been expressly conditional language in the seller's acknowledgment form and yet the court never addressed the issue of whether the Section 2–207(1) proviso prevented the formation of a contract by the exchange of documents. We decline to infer from the fact that the court failed to address the issue that it is the law of New York that the Section 2–207(1) proviso is no longer considered a part of that state's Uniform Commercial Code. A more reasonable inference is that in *Gaynor-Stafford,* as in the instant case, the parties did not squarely present to the court the potential impact of the Section 2–207(1) proviso on the "battle of the forms" questions presented in both cases.

Hence, the exchange of forms between Jordan and Itoh did not result in the formation of a contract under Section 2–207(1), and Jordan's form became a counteroffer. "[T]he consequence of a clause conditioning acceptance on assent to the additional or different terms is that *as of the exchanged writings, there is no contract.* Either party may at this point in their dealings walk away from the transaction." Duesenberg & King, *supra,* § 3.06[3] at 73. However, neither Jordan nor Itoh elected to follow that course; instead, both parties proceeded to performance—Jordan by delivering and Itoh by paying for the steel coils.

■ At common law, the "terms of the counter-offer were said to have been accepted by the original offeror when he proceeded to perform under the contract without objecting to the counter-offer." *Dorton, supra,* at 1166. Thus, under pre-Code law, Itoh's performance (*i. e.,* payment for the steel coils) probably constituted acceptance of the Jordan counter-offer, including its provision for arbitration. However, a different approach is required under the Code.

Section 2–207(3) of the Code first provides that "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract." As the court noted in *Dorton, supra,* at 1166:

> [W]hen no contract is recognized under Subsection 2–207(1) . . . the entire transaction aborts at this point. If, however, the subsequent conduct of the parties—particularly, performance by both

parties under what they apparently believe to be a contract—recognizes the existence of a contract, under Subsection 2–207(3) such conduct by both parties is sufficient to establish a contract, notwithstanding the fact that no contract would have been recognized on the basis of their writings alone.

Thus, "[s]ince . . . [Itoh's] purchase order and . . . [Jordan's] counter-offer did not in themselves create a contract, Section 2–207(3) would operate to create one because the subsequent performance by both parties constituted 'conduct by both parties which recognizes the existence of a contract.' " *Construction Aggregates, supra,* at 509.

■ What are the terms of a contract created by conduct under Section 2–207(3) rather than by an exchange of forms under Section 2–207(1)?[7] As noted above, at common law the terms of the contract between Jordan and Itoh would be the terms of the Jordan counter-offer. However, the Code has effectuated a radical departure from the common law rule.[8] The second sentence of Section 2–207(3) provides that where, as here, a contract has been consummated by the conduct of the parties, "the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act." Since it is clear that the Jordan and Itoh forms do not "agree" on arbitration, the only question which remains *under the Code* is whether arbitration may be considered a supplemen-

**7.** If a contract had been formed by the exchange of forms between Jordan and Itoh, it would have been necessary to look to Section 2–207(2) to ascertain the terms of that contract.

**8.** Jordan relies on *Roto-Lith, supra,* in support of its contention that Itoh's payment for the steel coils constituted acceptance of all the terms in Jordan's counter-offer. In *Roto-Lith* the court ignored Section 2–207(3) and simply applied the common law rule. In *Construction Aggregates* there had been additional actions by the negotiating parties—namely, buyer had objected to only some of the terms in seller's

writing—which indicated that buyer had in fact accepted the disputed terms in seller's counter-offer. Hence, this court did not reach the question of whether mere acceptance of and payment for the goods constituted acceptance of all the terms in seller's counter-offer. *Construction Aggregates, supra,* at 510 n.5. There were no such further actions by the parties in this case, and, therefore, being faced with the issue, we adopt the consensus of the courts and commentators that *Roto-Lith,* in reading Section 2–207(3) out of the Code, evidences an incorrect interpretation and application of Section 2–207. *See* note 5 *supra.*

tary term incorporated under some other provision of the Code.

■ We have been unable to find any case authority shedding light on the question of what constitutes "supplementary terms" within the meaning of Section 2–207(3)[9] and the Official Comments to Section 2–207 provide no guidance in this regard. We are persuaded, however, that the disputed additional terms (i. e., those terms on which the writings of the parties do not agree) which are necessarily excluded from a Subsection (3) contract by the language, "terms on which the writings of the parties agree," cannot be brought back into the contract under the guise of "supplementary terms." This conclusion has substantial support among the commentators who have addressed themselves to the issue. As two noted authorities on Article Two of the Code have stated:

> It will usually happen that an offeree-seller who returns an acknowledgment form will also concurrently or shortly thereafter ship the goods. If the responsive document [sent by the seller] contains a printed assent clause, and the goods are shipped and accepted, Subsection (3) of Section 2–207 comes into play. . . . [T]he terms on which the exchanged communications do not agree drop out of the transaction, and reference to the Code is made to supply necessary terms. . . . Rather than choosing the terms of one party over those of the other . . . it compels supplying missing terms by reference to the Code. . . .

Duesenberg & King, supra, § 3.06[4] at 73–74. Similarly, Professors White and Sum-

mers have concluded that "contract formation under subsection (3) gives neither party the relevant terms of his document, but fills out the contract with the standardized provisions of Article Two." White & Summers, supra, at 29.[10]

Accordingly, we find that the "supplementary terms" contemplated by Section 2–207(3) are limited to those supplied by the standardized "gap-filler" provisions of Article Two. See, e. g., Section 2–308(a) ("Unless otherwise agreed . . . the place for delivery of goods is the seller's place of business or if he has none his residence"); Section 2–309(1) ("The time for shipment or delivery or any other action under a contract if not . . . agreed upon shall be a reasonable time"); Section 2–310(a) ("Unless otherwise agreed . . . payment is due at the time and place at which the buyer is to receive the goods even though the place of shipment is the place of delivery"). Since provision for arbitration is not a necessary or missing term which would be supplied by one of the Code's "gap-filler" provisions unless agreed upon by the contracting parties, there is no arbitration term in the Section 2–207(3) contract which was created by the conduct of Jordan and Itoh in proceeding to perform even though no contract had been established by their exchange of writings.

We are convinced that this conclusion does not result in any unfair prejudice to a seller who elects to insert in his standard sales acknowledgement form the statement that acceptance is expressly conditional on buyer's assent to additional terms contained therein. Such a seller obtains a substantial benefit under Section 2–207(1) through the inclusion of an "expressly conditional"

---

**9.** In Construction Aggregates, supra, this court found it unnecessary to reach this issue since it found that there was conduct on the part of the buyer, other than mere acceptance of and payment for the goods without objection to the additional terms in seller's form, which manifested assent to the disputed additional terms. In that case, the buyer had expressly objected to some of the additional terms, without raising any objection to the others, and the seller agreed to the requested changes. It was held that such further action by the negotiating par-

ties took the case out of Section 2–207(3) for purposes of ascertaining the terms of the parties' contract. It has not been suggested that any such additional conduct is involved in the instant case.

**10.** See also Collins, Arbitration And The Uniform Commercial Code, 41 N.Y.U.L.Rev. 736, 744–45 n.33 (1966) ("While not entirely clear as to meaning, § 2–207(3) seems to provide that the terms of the contract formed by such conduct will exclude any item that is in dispute").

clause. If he decides after the exchange of forms that the particular transaction is not in his best interest, Subsection (1) permits him to walk away from the transaction without incurring any liability so long as the buyer has not in the interim expressly assented to the additional terms. Moreover, whether or not a seller will be disadvantaged *under Subsection (3)* as a consequence of inserting an "expressly conditional" clause in his standard form is within his control. If the seller in fact does not intend to close a particular deal unless the additional terms are assented to, he can protect himself by not delivering the goods until such assent is forthcoming. If the seller does intend to close a deal irrespective of whether or not the buyer assents to the additional terms, he can hardly complain when the contract formed under Subsection (3) as a result of the parties' conduct is held not to include those terms. Although a seller who employs such an "expressly conditional" clause in his acknowledgement form would undoubtedly appreciate the dual advantage of not being bound to a contract under Subsection (1) if he elects not to perform and of having his additional terms imposed on the buyer under Subsection (3) in the event that performance is in his best interest, we do not believe such a result is contemplated by Section 2–207. Rather, while a seller may take advantage of an "expressly conditional" clause under Subsection (1) when he elects not to perform, he must accept the potential risk under Subsection (3) of not getting his additional terms when he elects to proceed with performance without first obtaining buyer's assent to those terms. Since the seller injected ambiguity into the transaction by inserting the "expressly conditional" clause in his form, he, and not the buyer, should bear the consequence of that ambiguity under Subsection (3).

■ Moreover, even were we to assume *arguendo* that, in a simple diversity case, a disputed additional term, while not becoming part of a Section 2–207(3) contract as a consequence of the writings exchanged by the parties (which is clearly precluded by the language of Subsection (3)), could be brought into that contract as a "supplementary term" by implication from custom and usage, the district court's denial of the stay application must still be affirmed. After the Supreme Court's decision in *Prima Paint, supra,* it is clear that "this action is not a simple diversity suit, but involves federal rights asserted under the Federal Arbitration Act." *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263 (7th Cir. 1976). Accordingly, "[f]ederal courts are bound to apply rules enacted by Congress with respect to matters—here, a contract involving commerce—over which it has legislative power." *Prima Paint, supra,* 388 U.S. at 406, 87 S.Ct. at 1807. Under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, federal district courts may issue a stay order only where there is an agreement in *writing* for arbitration. While the arbitration provision need not be signed to come within Section 3, the Act requires that there be a *written* agreement to arbitrate. *See Fisser v. International Bank,* 282 F.2d 231 (2d Cir. 1960). As noted above, there is no *written* arbitration provision included in the contract created under Section 2–207(3) when Jordan and Itoh proceeded to performance.

Accordingly, for the reasons stated in this opinion, the decision of the district court is affirmed.

AFFIRMED.