# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1260

_____

|  |  |  |
|---|---|---|
| PCS Nitrogen Fertilizer, L.P., f/k/a Arcadian Fertilizer, L.P., | * * * | |
| Appellee, | * * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska |
| The Christy Refractories, L.L.C., | * * | |
| Appellant. | * | |

_____

Submitted:  December 15, 1999

Filed:  September 15, 2000

_____

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

The Christy Refractories, L.L.C. (Christy), appeals from an interlocutory order entered in the United States District Court[1] for the District of Nebraska holding that the underlying dispute between Christy and PCS Nitrogen Fertilizer, L.P. (PCS), is not subject to mandatory arbitration.  See PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C., No. 8:98CV390 (D. Neb. Dec. 28, 1998) (hereinafter "slip op.").

_____

[1] The Honorable William G. Cambridge, then Chief Judge, United States District Court for the District of Nebraska.

For reversal, Christy argues that the district court erred in interpreting the pertinent contract documents because (1) Christy's customer acknowledgment was a "definite and seasonable expression of acceptance" and thus bound PCS to its terms, which included a mandatory arbitration clause; (2) the added arbitration term became part of the contract because the clause did not materially alter the contract or, alternatively, because PCS assented to it; (3) Christy's customer acknowledgment was a counter-offer accepted by PCS; or (4) the arbitration clause became part of the contract as a result of the parties' course of dealing. For the reasons discussed below, we affirm the order of the district court.

**Jurisdiction**

Jurisdiction in the district court was proper based upon 28 U.S.C. § 1332. Jurisdiction in the court of appeals is proper based upon 9 U.S.C. § 16(a)(1) and 28 U.S.C. § 1292(a)(1). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

**Background**

The following statement of facts is drawn from the district court order and the record on appeal. PCS, a manufacturer of ammonia fertilizers, is a Delaware limited partnership authorized to do business in Nebraska. PCS has a buying office in LaPlatte, Nebraska, among its several offices nationwide. Christy is a Missouri limited liability company also authorized to conduct business in Nebraska.

On February 4, 1997, through its LaPlatte office, PCS submitted a purchase order to Christy for a certain quantity of a catalyst support medium (hereinafter "the goods") for use in PCS's manufacturing process. See Appellant's Appendix (hereinafter "App.") at 33-36 (PCS purchase order). PCS's purchase order contained no term regarding the arbitration of disputes. See id. In response, on February 7, 1997,

-2-

Christy sent a customer acknowledgment form. See id. at 37-38 (Christy customer acknowledgment). The face of Christy's form contained the statement: "THIS CONTRACT CONSISTS OF THE TERMS AND CONDITIONS ON THE FACE AND REVERSE HEREOF. THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." Id. at 37 (set forth in capital letters in original). The terms and conditions of sale were set forth on the reverse side of the form and included the following initial term:

> 1. Offer and Acceptance . . . . Seller's acceptance of any offer by Purchaser to purchase the Products is expressly conditional upon the Purchaser's assent to all the terms and conditions herein, including any terms additional to or different from those contained in the offer to purchase. Seller hereby objects to any different or additional terms or conditions contained in any acceptance by Purchaser of any offer made by Seller or in any other document submitted by Purchaser. No modification, addition, deletion, rescission or waiver by Seller of any term or condition set forth herein or of any of Seller's rights or remedies hereunder shall be binding upon Seller unless agreed to in a writing signed by Seller. Purchaser shall be deemed to have assented to these terms and conditions unless Seller receives written notice of any objection within 10 days after Purchaser's receipt of this form and in all events prior to delivery or other performance by Seller.

Id. at 38. Another term on the reverse side of Christy's form provided for arbitration of contractual disputes between PCS and Christy as follows:

> 26. Arbitration. If any dispute occurs between Purchaser and Seller arising out of or related to this Contract, Seller, in its sole discretion, may require that such dispute be settled by arbitration under the then current rules of the American Arbitration Association. If Seller elects to submit any such dispute to arbitration, the decision and award of the arbitrator shall be firm and binding and the award may be entered in any court having jurisdiction. Any arbitration shall be held and the award shall be deemed to be made in St. Louis, Missouri.

Id. Finally, the last sentence on the terms and conditions page of the form stated that "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." Id. (set forth in capital letters in original).

On or about May 1, 1997, Christy delivered the goods to PCS's LaPlatte office. See id. at 32 (affidavit of Gary Altman) (Sept. 25, 1998). PCS alleges that, following use in its manufacturing process, the goods failed to function as warranted. See id. at 2-3 (Amended Complaint, ¶ 10). PCS subsequently commenced this action against Christy in the United States District Court for the District of Nebraska and claimed damages of $940,876.36 for the cost of the goods, lost production, and the clean-up and repair costs associated with the damage that the goods allegedly caused to PCS's manufacturing equipment.

On September 4, 1998, Christy filed a Demand for Arbitration with the American Arbitration Association ("AAA") and attached a copy of PCS's purchase order and Christy's customer acknowledgment form. See id. at 41-49. On September 25, 1998, PCS formally objected to Christy's demand for arbitration and requested a stay of arbitration. See id. at 53-54. On the same day, PCS asked the district court to decide whether PCS was required to arbitrate its claims against Christy and to enjoin arbitration pending the district court's arbitrability determination. See id. at 13-14 (Motion to Enjoin Arbitration), 19-20 (Motion for Determination of Arbitrability).

The district court granted PCS's motion to enjoin arbitration, see PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C., No. 8:98CV390 (D. Neb. Nov. 24, 1998), and later granted PCS's motion to determine arbitrability, concluding that the arbitration provision was not an enforceable part of the parties' agreement. See slip op.

-4-

at 1.  Applying Article 2 of the Uniform Commercial Code (UCC),[2] the district court held that, because Christy's acceptance was expressly conditional upon PCS's assent to additional terms (including the arbitration clause), no contract was formed under UCC § 2-207(1).  See id. at 3-4.  The district court alternatively determined that, even if Christy's customer acknowledgment was a valid acceptance under § 2-207(1), the provisions of § 2-207(2) prevented incorporation of Christy's added terms because the arbitration clause was a material alteration of the contract.  See id. at 5-7.  Finally, the district court held that the additional arbitration terms could not qualify as a supplemental term under § 2-207(3) given the parties' limited course of dealing.  See id. at 7-8.  This appeal followed.

## Discussion

A party who has not agreed to arbitrate a dispute cannot be forced to do so.  See AT&T Techs., Inc. v. Communication Workers of Am., 475 U.S. 643, 648 (1986).  Accordingly, the court must determine "whether there is an agreement between those parties which commits the subject matter of the dispute to arbitration."  ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc., 133 F.3d 664, 668 (8th Cir. 1998).  Where the arbitrability of the dispute depends on contract interpretation, we review the district court's decision de novo.  See Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir.1999).  To the extent that the district court's order concerning arbitrability is based on factual findings, we review those findings for clear error.  See id.

---

[2]The district court noted that, although the parties agreed that UCC § 2-207 governed, neither side had addressed whether Nebraska or Missouri law should apply.  See slip op. at 3.  The district court reasoned that "[t]he exercise likely would be academic, however, as the Nebraska and Missouri versions of UCC § 2-207 are essentially the same."  Id. (citing N&D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722 (8th Cir. 1976), for proposition that it is unnecessary to resolve a choice-of-law issue where the states involved adopted UCC § 2-207 without modification).

UCC § 2-207(1)

Christy initially argues that its customer acknowledgment form was a definite and seasonable expression of acceptance within the spirit of UCC § 2-207(1) despite its "expressly conditional" language and thus the district court erred in determining that PCS was not required to arbitrate its claim. UCC § 2-207(1) states that

> a definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, *unless acceptance is expressly made conditional on assent to the additional or different terms*.

Id. (emphasis added). Christy acknowledges that its customer acknowledgment form tracked the language of § 2-207(1). See App. at 38 (Christy customer acknowledgment form) ("Seller's *acceptance* of any offer by Purchaser to purchase the Products *is expressly conditional upon the Purchaser's assent to all terms and conditions herein, including any terms additional to or different from those contained in the offer to purchase*.") (emphasis added).

Nonetheless, Christy urges that this "mechanical" language within its form should not foreclose a valid acceptance, because "often the parties do no impart such significance to the terms on the printed forms as to have them prevent a contract from being consummated." Brief for Appellant at 9; see also Dorton v. Collins & Aikman Corp., 453 F.2d 1161, 1166 (6th Cir. 1972) (Dorton) (noting that, "[w]hereas under common law the disparity between the fineprint terms in the parties' forms would have prevented the consummation of a contract when these forms are exchanged, Section 2-207 recognizes that in many, but not all, cases the parties do not impart such significance to the terms on the printed forms."). Instead, Christy contends that the district court should have looked beyond the acknowledgment form's language and focused on the parties' intent as determined by the factual circumstances surrounding

the agreement, to determine whether the acceptance was in fact expressly conditional on PCS's assent. See Brief for Appellant at 12-13 (citing John E. Murray, Section 2-207 of the Uniform Commercial Code: Another Word About Incipient Unconscionability, 39 U. Pitt. L. Rev. 597 (1978)). But see C. Itoh & Co. (America) v. Jordan Int'l Co., 552 F.2d 1228, 1235-36 (7th Cir. 1977) (Itoh) (holding that written confirmation was not valid acceptance under § 2-207(1) where it contained language matching § 2-207(1)'s "expressly conditional" proviso). Christy argues that, based on the facts and circumstances, its customer acknowledgment form was intended as an acceptance and was treated as such by PCS, given that PCS expressly required such an acknowledgment to make the offer binding, see App. at 34 (PCS purchase order) ("This order shall not be binding upon Buyer until Seller's acknowledgment of this order has been received at Buyer's issuing office."), and that PCS failed to object in writing within ten days to Christy's acknowledgment form. See id. at 38 (Christy customer acknowledgment form) ("Purchaser shall be deemed to have assented to these terms and conditions unless Seller receives written notice of any objection within 10 days after Purchaser's receipt of this form and in all events prior to delivery or other performance by Seller.").

We disagree. Although an acceptance containing additional or different terms (such as an arbitration clause) will typically not preclude § 2-207(1) contract formation, the creation of a contract is prevented where "acceptance is expressly made conditional on assent to the additional or different terms." White Consol. Indus., Inc. v. McGill Mfg. Co., 165 F.3d 1185, 1191-92 (8th Cir. 1999) (White). While an acceptance need not match the exact language of § 2-207(1) to be considered "expressly conditional," see id. at 1191 ("To require the exact language of the UCC would be too formalistic and inconsistent with the UCC's requirement that its provisions be liberally construed."), an acceptance which precisely follows § 2-207(1) clearly forestalls contract formation. See Itoh, 552 F.2d at 1235. The pertinent language on Christy's acknowledgment form reads: "Seller's acceptance of any offer by Purchaser to purchase the Products is expressly conditional upon the Purchaser's assent to all the

terms and conditions herein, including any terms additional to or different from those contained in the offer to purchase." App. at 38 (Christy customer acknowledgment form). By its very construction, Christy's acceptance is expressly conditional on PCS's assent to all the terms, including the arbitration provision (an additional and different term), contained within the acknowledgment form. Thus, even under a narrower interpretation of § 2-207(1), Christy's acknowledgment cannot be a valid acceptance under § 2-207(1) and, accordingly, no contract was created by the exchange of forms. See Dorton, 453 F.2d at 1168 ("In order to fall within this [§ 2-207(1)] proviso, it is not enough that an acceptance is expressly conditional on additional or different terms; rather, an acceptance must be expressly conditional on the offeror's assent to those terms.").

Christy argues that, if its customer acknowledgment form was not a valid acceptance of PCS's offer, then the acknowledgment form was converted into a non-binding counter-offer to which PCS in turn assented through its acceptance of and payment for the goods. See Brief of Appellant at 27-31; see also Construction Aggregates Corp. v. Hewitt-Robins, Inc., 404 F.2d 505 (7th Cir. 1968) (Construction Aggregates) (holding that, although seller's acknowledgment was not valid acceptance of buyer's offer under § 2-207(1), buyer's subsequent acceptance of and payment for goods along with buyer's objection to a particular term within counter-offer constituted assent to remaining terms of counter-offer), cert. denied, 395 U.S. 921 (1969); John E. Murray, Jr., The Chaos of the "Battle of the Forms": Solutions, 39 Vand. L. Rev. 1307, 1335 (1986) (proposing that, "if a counter-offer clearly reveals that the seller-offeree is shipping the goods on his own terms, and the buyer has reason to know that clear intention, the buyer's acceptance of the goods should manifest a conduct acceptance of the counter-offer").

We agree that, if Christy's acknowledgment form was not a valid acceptance, then it stands as a non-binding counter-offer. See JOM, Inc. v. Adell Plastics, Inc., 193 F.3d 47, 53 (1st Cir. 1999) (en banc) (JOM) ("[I]f a seller does make its acceptance

-8-

'expressly conditional' on the buyer's assent to any additional or divergent terms in the seller's invoice, the invoice is merely a counteroffer, and a contract is formed only when the buyer expresses its affirmative acceptance of the seller's counteroffer."); Mead Corp. v. McNally-Pittsburg Mfg., 654 F.2d 1197, 1206 (6th Cir. 1981); Itoh, 552 F.2d at 1236. Moreover, if PCS had in fact assented to this counter-offer, the parties would have created a contract, such that the additional terms in Christy's acknowledgment (including the arbitration clause) would have become part of the contract. See Diamond Fruit Growers, Inc. v. Krack Corp., 794 F.2d 1440, 1443 (9th Cir. 1986) (Diamond) (citing J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, § 1-2, at 32-33 (2d ed. 1980)).

However, mere acceptance of and payment for goods does not constitute acceptance of all the terms in the seller's counter-offer. See Ralph Shrader, Inc. v. Diamond Int'l Corp., 833 F.2d 1210, 1215 (6th Cir.1987) (rejecting argument that buyer implicitly assented to counter-offer, given buyer's acceptance of and payment for goods); Diamond, 794 F.2d at 1444-45 (refusing to equate assent with the acceptance of goods and payment for them, because this would in effect reinstate the common law rule that § 2-207 was designed to abolish); Itoh, 552 F.2d at 1236 n.8 (adopting view that, with no other actions by the parties, mere acceptance and payment does not establish assent). Instead, specific and affirmative assent to the seller's counter-offer is necessary to create a contract. See JOM, 193 F.3d at 53 (requiring "affirmative acceptance of the seller's counteroffer" for § 2-207(1) contract formation); Diamond, 794 F.2d at 1444 (rejecting seller's argument that acceptance of goods and payment for them is equivalent to assent and mandating "specific and unequivocal assent" to terms of counter-offer); Itoh, 552 F.2d at 1235 (noting that buyer "never expressly assented to the challenged arbitration term"). Thus, Christy's reliance on Construction Aggregates is misplaced, because in that case "there had been additional actions by the negotiating parties[,] namely, buyer had objected to only some of the terms in seller's writing which indicated that buyer had in fact accepted the disputed terms in seller's counter-offer." Itoh, 552 F.2d at 1236 n.8. No such "additional actions" or evidence

of affirmative assent are present here. Thus, we cannot say that PCS affirmatively accepted Christy's counter-offer and created a contract under § 2-207(1) that included the added arbitration provision. However, to the extent that the parties' actions may nevertheless have created a contract, such factual circumstances may be taken into consideration under § 2-207(3).[3] See Dorton, 453 F.2d at 1166 ("[W]hen no contract is recognized under Subsection 2-207(1) . . . the entire transaction aborts at this point. If, however, the subsequent conduct of the parties - particularly, performance by both parties under what they apparently believe to be a contract - recognizes the existence of a contract, under Subsection 2-207(3) such conduct by both parties is sufficient to establish a contract, notwithstanding the fact that no contract would have been recognized on the basis of their writings alone.").

UCC § 2-207(3)

---

[3] Notably, if a contract had in fact been formed between Christy and PCS under § 2-207(1), we would have applied § 2-207(2) to determine the contract's terms, as the district court did in the alternative. See slip op. at 5-7 (holding that, even if the parties had formed a contract under § 2-207(1), the arbitration clause materially altered the contract and therefore did not become part of the parties' agreement); see also C. Itoh & Co. (America) v. Jordan Int'l Co., 552 F.2d 1228, 1236 n. 7 (7th Cir. 1977) (Itoh) (noting that § 2-207(2) analysis necessary if contract formed under § 2-207(1)). Section 2-207(2) provides:

> [t]he additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

However, because the parties did not form a contract under § 2-207(1), we need not address Christy's arguments as to the applicability of § 2-207(2).

Christy alternatively argues that, if the parties failed to create a contract under § 2-207(1), the parties' conduct after the exchange of forms was nonetheless sufficient under § 2-207(3) to establish a contract that included the supplementary arbitration term. Section 2-207(3) states that:

> [c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Christy contends that § 2-207(3)'s reference to "supplementary terms incorporated under any other provisions of this Act" encompasses those terms arrived at through the course of performance, course of dealing, or usage of trade, as well as the UCC's standard "gap-fillers." See Brief for Appellant at 32-33 (citing Dresser Indus., Inc. v. Gradall Co., 965 F.2d 1442, 1451 (7th Cir. 1992), and Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1579 (10th Cir. 1984)). Christy further argues that the arbitration clause here should be included as a supplementary term of the contract, given the course of dealing between the parties. See id. at 33 (citing UCC § 1-205 (defining "course of dealing" as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.")). According to Christy, the parties' course of dealing included Christy's mailing of multiple customer acknowledgment forms to PCS, the review of and lack of objection to these forms by PCS, as well as delivery and acceptance of the goods. On these facts, Christy asserts that the parties' sequence of previous conduct established a "common basis of understanding" that disputes would be resolved through arbitration.

We agree that the parties' conduct established a contract for sale between PCS and Christy under § 2-207(3). The parties clearly behaved in a manner that recognized

the existence of a contract, as demonstrated by Christy's delivery of the goods and PCS's acceptance of, payment for, and attempted use of the goods. Under § 2-207(3), the contract integrates "those terms on which the writings of the parties agree," which necessarily excludes the disputed arbitration term added in Christy's customer acknowledgment form. Accordingly, if the arbitration clause is to become part of the § 2-207(3) contract between PCS and Christy, it must be a supplementary term "incorporated under any other provisions" of the UCC.

Assuming *arguendo* that supplementary terms include terms arrived at through a course of dealing,[4] we hold that the parties' conduct did not constitute a course of dealing sufficient to integrate the arbitration provision into the parties' contract. As noted by the district court, of the 16 customer acknowledgment forms Christy sent to PCS between mid-1996 and mid-1997, only nine of those forms went to PCS's LaPlatte office,[5] with eight relating to the <u>same</u> purchase order, namely the order of goods at issue here. Thus, PCS's LaPlatte office received only one customer acknowledgment form prior to the events giving rise to the instant litigation. This in and of itself hardly

---

[4]Courts and commentators have read § 2-207(3)'s reference to "supplementary terms" differently. <u>Compare</u> <u>Dresser Indus., Inc. v. Gradall Co.</u>, 965 F.2d 1442, 1451 (7th Cir. 1992) (holding that "all of the U.C.C.'s provisions should be used in discerning the terms of a contract under § 2-207(3), including those provisions that allow us to examine the parties' performance."); 2 W. Hawkland, Uniform Commercial Code Series § 2-207:04, at 109-10 (1990) (arguing that parties' course of conduct should be considered under § 2-207(3)), <u>with</u> <u>Itoh</u>, 552 F.2d at 1237 (limiting "supplementary terms" to those supplied by the stock "gap-filler" provision of Article Two); 1 J. White & R. Summers, Uniform Commercial Code, § 1-3 at 45 (3d ed. 1988) (asserting that "supplementary terms" should be limited to UCC's explicit "gap-fillers").

[5] PCS's buying offices (located in Clinton, Iowa, and Augusta, Georgia, as well as LaPlatte) purportedly operate autonomously with respect to purchases. Accordingly, PCS claims that the information and documentation supporting each purchase is generated separately and independently by the various buying offices. <u>See</u> Appellant's Appendix (hereinafter "App.") at 127-28 (affidavit of Gary Altman) (Nov. 2, 1998).

establishes a prior course of dealing sufficient to allow Christy to unilaterally include the arbitration provision in the contract. Moreover, the fact that Christy repeatedly sent its customer acknowledgment form to PCS does not establish a course of dealing; the multiple forms merely demonstrated Christy's desire to include the arbitration clause as a term of the contract. See *In re* CFLC, Inc., 166 F.3d 1012, 1017 (9th Cir. 1999) ("Course of dealing analysis is not proper in an instance where the only action taken has been the repeated delivery of a particular form by one of the parties."); Step-Saver Data Sys., Inc. v. Wyse Tech., 939 F.2d 91, 104 (3d Cir. 1991) (holding that "the repeated sending of a writing which contains certain standard terms, without any action with respect to the issues addressed by those terms, cannot constitute a course of dealing which would incorporate a term of the writing otherwise excluded under § 2-207" because "the repeated exchange of forms by the parties only tells [buyer] that [seller] desires certain terms. Given [seller's] failure to obtain [buyer's] express assent to these terms before it will ship the program, [buyer] can reasonably believe that, while [seller] desires certain terms, it has agreed to do business on other terms--those terms expressly agreed upon by the parties.").

## Conclusion

We hold that Christy's customer acknowledgment form was not a valid acceptance under UCC § 2-207(1), that the parties nonetheless created a contract under UCC § 2-207(3) through their subsequent conduct, but that this contract between PCS and Christy did not include the disputed arbitration term. Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-